UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM CARPENTER and LANI VENTO, husband and wife,<br><br>           Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>           Defendant. | CASE NO. 13-5633 RJB<br><br>ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment to Limit the Award of Damages Based upon Veterans' Benefits. Dkt. 29. The Court has considered the pleadings filed regarding the motion and the file herein.

This Federal Tort Claims Act case arises from the United States Department of Veterans Affairs' ("VA") failure to diagnose a malignant tumor in William Carpenter's spine for almost six months despite symptoms of a spinal injury. Dkt. 1. Once the tumor was discovered, doctors

determined that the tumor had compressed Mr. Carpenter's spine and that he required emergency surgery. *Id.* When he awoke from surgery, he was a paraplegic. *Id.*

On June 16, 2014, Plaintiffs' motion for partial summary judgment on the issue of liability was granted. Dkt. 28. (Defendant did not contest liability. Dkt. 26.) The undersigned noted that the determination of damages remain for trial. Dkt. 28.

Defendant now moves for partial summary judgment to limit the potential award of damages. Dkt. 29. For the reasons stated below, the Defendant's motion to summarily dismiss Plaintiffs' damage claim for past medical expenses should be granted and its motion to summarily dismiss Plaintiffs' damage claim for future medical expenses should be denied.

## I. FACTS AND PENDING MOTION

### A. FACTS

After his emergency spinal surgery, Mr. Carpenter remained at the VA hospital for three months where he received treatment through the VA's Spinal Cord Injury Unit ("SCI"). Dkt. 33, at 1. He asserts that while in the SCI, he was told that his treatment would continue through this unit for the rest of his life. Dkt. 33, at 1.

On his discharge, however, Mr. Carpenter's status was changed from an SCI patient to an oncology patient. *Id.* He testified that while he would like to get continuing service through SCI, he was told that he no longer would be able to do so. Dkt. 30-1, at 4. His primary care physician was changed from a spine specialist to a general practitioner, who was to conduct his physicals and manage his care. Dkt. 33, at 2.

Mr. Carpenter has requested help from the VA "with ongoing pain, foot problems, PTSD, and physical therapy." Dkt. 33, at 2. He asserts that these "problems were either not dealt with at all or, as in the case of the foot problems, [he] was sent to the wrong kind of specialist." *Id.*

Mr. Carpenter would like to receive medical treatment closer to home. *Id.,* at 2. He notes that the closest VA facility to his home is 21 miles away, and with traffic, can take up to an hour each way to get there. Dkt. 33, at 2. The VA hospital in Seattle, where he has oncology appointments, is 60 miles away and can take up two hours each way depending on traffic. *Id.* His VA approved primary care physician is 25 miles away from his home. *Id.* Although the VA initially approved physical therapy at a clinic close to his home, he asserts that the VA will no longer do so. *Id.* He is now seeing a physical therapist in Olympia who specializes in spinal cord injuries, and he is paying for that treatment himself. *Id.,* at 3.

Mr. Carpenter has had difficulty scheduling appointments with his primary care physician. *Id.,* at 3. The VA has denied reimbursement requests and denied his neurosurgeon's requests that he be allowed to continue follow-up visits. *Id.* Mr. Carpenter paid for a follow-up appointment with a neurosurgeon himself. *Id.*

He has a physiatrist, physical therapist, and neurosurgeon that he would like to see as an alternative to VA care. *Id.,* at 3. He states that he "does not want to have the VA as [his] only treatment option for the rest of [his] life." Dkt. 33, at 3. Further, he and his wife are considering moving, perhaps overseas (Dkt. 32-1, at 15) where VA care may not be available.

**B. PENDING MOTION**

Defendant now moves for summary dismissal of claims for damages for past medical costs, which were already provided by the VA. Dkt. 29. Plaintiffs concede that they are barred by Washington law, RCW 7.70.080, from seeking those costs because they were paid by a collateral source. Dkt. 31. They state that they are not seeking a damage award for those past medical costs. *Id.* Accordingly, the Defendant's motion in regard to past medical costs (Dkt. 29) should be granted and no further analysis on that issue is necessary.

1    Defendant also moves for partial summary dismissal of damages for future medical costs
2 that are and will be available to Mr. Carpenter through the VA. Dkt. 29. Defendant argues that
3 the waiver of sovereign immunity under the FTCA extends only to single damages and not
4 double damages (which it asserts Mr. Carpenter would receive if he was awarded damages for
5 future medical costs and received future care from the VA) and that Washington law, which
6 governs, demonstrates a strong interest in prohibiting double damages. *Id.*

7    Plaintiffs oppose the motion to summarily dismiss their damages claim for future medical
8 costs arguing that: 1) future medical benefits from a collateral source like the VA are not
9 deducted from a plaintiff's damages under Washington law and 2) courts resist forcing a victim
10 of malpractice to return to his tortfeasor for care. Dkt. 31.

## II.   DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

13    Summary judgment is proper only if the pleadings, the discovery and disclosure materials
14 on file, and any affidavits show that there is no genuine issue as to any material fact and that the
15 movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is
16 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient
17 showing on an essential element of a claim in the case on which the nonmoving party has the
18 burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue
19 of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find
20 for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
21 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some
22 metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a
23 material fact exists if there is sufficient evidence supporting the claimed factual dispute,
24

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B.  FTCA AND SOVEREIGN IMMUNITY

The United States, as sovereign, is immune from suit unless it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995). Any waiver of that immunity must be strictly construed in favor of the United States. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992). If a claim does not fall squarely within the strict terms of a waiver of sovereign immunity, a district court is without subject matter jurisdiction. *See, e.g.*, *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993). The FTCA is a limited waiver of sovereign immunity, rendering the United States liable for certain torts of federal employees,

"if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

Defendant argues that Congress's waiver of sovereign immunity in the FTCA does not extend to circumstances in which the government pays "twice for the same injury." Dkt. 29, at 6 (citing *Brooks v. United States*, 337 U.S. 49, 53(1949)). It argues accordingly, that this Court does not have jurisdiction over damages claims for future medical costs for care that is available through the VA under *Brooks*.

The Court in *Brooks* did not go that far. It held that military members on leave could assert a claim under the FTCA. *Id.* It then remanded the case to the Court of Appeals to consider the "the problem of reducing damages pro tanto, should it decide that such consideration is proper in view of the District Court judgment and the parties' allegations of error." It did so after noting that allowing military members on leave to bring an FTCA case:

> [D]oes not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the Tort Claims Act. Without the benefit of argument in this Court, or discussion of the matter in the Court of Appeals, we now see no indication that Congress meant the United States to pay twice for the same injury. Certain elements of tort damages may be the equivalent of elements taken into account in providing disability payments. It would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example. And whatever the legal theory behind a wrongful death action, the same considerations might apply to the Government's gratuity death payment to Arthur Brooks' survivors, although national service life insurance might be considered a separate transaction, unrelated to an action in tort or other benefits.
> But the statutory scheme and the Veterans' Administration regulations may dictate a contrary result. The point was not argued in the case as it came to us from the Court of Appeals. The court below does not appear to have passed upon it; it was unnecessary, in the view they took of the case. We do not know from this record whether the Government objected to this portion of the District Court judgment— nor can we tell from this record whether the Court of Appeals should consider a general objection to the judgment sufficient to allow it to consider this problem. Finally, we are not sure how much deducting the District Judge did. It is obvious

        that we are in no position to pass upon the question of deducting other benefits in the case's present posture.

*Id.*, at 53-54.

Parties point out that there is no U.S. Supreme Court case or Ninth Circuit Court of Appeals case which directly address whether a victim of malpractice by the VA receives a double recovery when they are awarded future medical costs and can still potentially receive medical care from the VA for that injury. The Ninth Circuit has noted that "[c]ourts following *Brooks* have not allowed a straight setoff of veterans benefits against all damages recoverable under the FTCA. Rather, these courts have considered the elements of damage in each case and have permitted veterans benefits to be set off only against those elements for which the veterans benefits were intended to compensate." *Pike v. United States*, 652 F.2d 31, 34 (9th Cir. 1981). In *Pike*, the Ninth Circuit held that the benefits received by children of a military member, who died as a result of a VA hospital's negligence, were intended to compensate for the loss of support. *Id.* It held that the additional damages plaintiffs were awarded in their case (for burial expenses, loss of love, mental anguish, and loss of projected increase in net worth suffered by the estate) were not intended to compensate for loss of support and so were double damages for which the government was entitled a set off. *Id*.

Considering *Brooks* and *Pike*, Defendant's motion for summary judgment regarding a set off for future medical costs should be denied. Defendant has failed to show that there are no issues of fact and that it is entitled to a judgment as a matter of law. Defendant argues here that the VA medical care is intended to address the medical needs of veterans, and Plaintiff is requesting future medical costs. Defendant asserts that it is entitled to an offset for the benefit provided – future medical care that is available at the VA. Defendant argues that the VA's spinal

1   care is very good.  Defendant points to the opinion of Virtaj Singh M.D., which under the

2   heading "Further Treatments" provides:

3>   Patients with spinal cord injuries have a unique set of medical needs.  These needs include routine medical check-ups, including various diagnostic tests that able-bodied persons do not require (e.g., routine KUB or renal US, testosterone levels, lipid panels, bone density scans, etc.).  In addition, patients with SCI require routine functional evaluations and benefit from ongoing work with SCI physical and occupational therapy specialists.  Finally, patients with SCI also benefit greatly from having their care managed by physicians that are SCI specialists with thorough understanding of the unique medical needs of this patient population.

>   One could attempt to describe the patient's various future medical needs individually and outline the costs of this care, but this list would be quite extensive.  Alternatively, one could look to analyses conducted on the SCI Model System's data, and estimate patient's annual medical costs and other living expenses directly related to their SCI.  However, in the patient's case, he has the benefit of access to care through the VA system.  I am able to state without reservation that I believe the local VA system provides excellent SCI care, and therefore I would highly recommend that the patient simply continue to receive his SCI-related care through the VA hospital.  I have trained in multiple SCI centers including two different Model Systems of care and believe that the approach of the VA Puget Sound Healthcare System is second to none.  This system takes a comprehensive approach in which patients are admitted on a yearly basis for an annual evaluation.  During this evaluation, the patient would undergo all his routine tests and have the opportunity to work with members of the interdisciplinary SCI team, including SCI MDs, PTs, OTs, Vocational Rehab, Rehab Psychology, Rehab Nursing, Nutrition, and so forth. I find this comprehensive approach to be an efficient and ideal model of care, analogous to the Johns Hopkins Executive Health Program, which is considered by many to be the gold standard in health care.

Dkt. 30-4, at 23.  Defendant has failed to show, at this stage, that there are no issues of fact as to whether Plaintiff will actually get the care that it says the VA has available.  Plaintiff points out that the VA has denied him access to the SCI unit, VA care is often far from his home, it has denied him access to care that is reasonably necessary, he has been paying for necessary care out of his own pocket, and he may move outside the country where VA care will not be available.  Dkt. 33.  With so many facts at issue, the Court is unwilling to now decide, in what would amount to an advisory opinion, whether the possibility that Plaintiff will seek care in the future

ORDER ON DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT- 8

from the VA related to this injury would amount to double damages. The motion regarding future damages should be denied.

### C. WASHINGTON LAW

The Defendant also argues that under Washington law, the motion regarding future medical damages should be granted. Dkt. 29. The events complained of occurred in Washington, so Washington law applies to Plaintiffs' FTCA claims. *See Richard v. United States*, 369 U.S. 1, 9 (1962). Defendant argues that Washington has a strong interest in avoiding awarding double damages, citing RCW 7.7.080. Dkts. 29 and 31. RCW 7.7.080 provides that: "Any party may present evidence to a trier of fact that the plaintiff has already been compensated for the injury complained of from any source except the assets of the plaintiff, the plaintiff's representative, or the plaintiff's immediate family." "Compensation" is defined as " . . . payment of money or other property to or on behalf of the plaintiff, rendering of services to the plaintiff free of charge to the plaintiff, or indemnification of expenses incurred by or on behalf of the plaintiff."

Defendant's motion to summarily dismiss Plaintiffs' claim for future medical damages should be denied under Washington law. While Washington has a strong interest in avoiding double damages, Washington law requires, generally, that "the party claiming an offset has the burden of proving this claim." *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 160 Wash. App. 728, 735, 253 P.3d 101, 105 (2011) (citing *Maziarski v. Bair*, 83 Wash.App. 835, 841, 924 P.2d 409 (1996); *Smith v. McLaren*, 58 Wash.2d 907, 910, 365 P.2d 331 (1961) (party claiming setoffs provided no competent evidence supporting claims); *Alway v. Carson Lumber Co.*, 57 Wash.2d 900, 901–02, 355 P.2d 339 (1960) (record too vague to meet defendant's burden of proving setoff)). At this stage, Defendant has not yet met its burden. As

1 above, there are issues of fact as to whether there would be any double recovery in the future
2 here. Moreover, Plaintiff properly points out that RCW 7.7.080 applies to past compensation,
3 not future compensation.

4 Parties both discuss Washington's collateral source rule – that medical benefits for future
5 care are a collateral source that does not offset a plaintiffs' recovery at trial. Dkts. 29, at 9 n. 2;
6 31, at 6. Both agree that, generally, a collateral source is one independent of the wrongdoer. *Id.*
7 Plaintiff argues that when it comes to VA malpractice cases, however, courts should look "to the
8 nature of the payment and the reasons the payment is being made rather than simply looking at
9 whether the defendant is paying twice." Dkt. 31, at 6-7 (*quoting Molzof v. United States,* 6 F.3d
10 461, 464-65 (7th Cir. 1993)).

11 In *Molzof v. United States*, 502 U.S. 301 (1992), the Supreme Court rejected the
12 government's argument that an award of future medical costs to a plaintiff who could receive
13 VA medical care would be duplicative and punitive. The case was remanded to determine
14 whether under Wisconsin law, the plaintiff was entitled to the damages they sought. *Id.* On
15 remand, Plaintiff was awarded future medical expenses because the Seventh Circuit found that
16 under Wisconsin law, the benefits would be deemed collateral. *Molzof v. United States (Molzof*
17 *III),* 6 F.3d 461, 464-65 (7th Cir. 1993). It reasoned that the courts of Wisconsin would find that
18 VA benefits for future medical care would be similar to employee health benefits, where an
19 employee contributes part of his salary to sustain the program. *Id.* In *Jeffries v. United States*,
20 Western District of Washington case 08-1514RSL, a court in this district faced the same issue.
21 There the plaintiff was injured in a VA hospital in Mississippi. *Id.* The court, applying
22 Mississippi law, deferred the United States' motion, to summarily dismiss plaintiff's claim for
23 future medical costs because he could get care at the VA, until after the trial. *Id.*, Dkt. 47, at 14.
24

The Court found that although there was no Mississippi law that veteran's health care is given in consideration of service and that Mississippi had a policy preference against double damages, the reasoning in *Molzof III* was persuasive. *Id.,* Dkt 47, at 16. The Court noted: "[e]ven though the United States is the ultimate provider of both health care and damages, the nature of the former is 'as a payment from defendant as insurer to the plaintiff insured,' while the nature of the latter is 'as payment from defendant as tortfeasor to the plaintiff as the party injured by the defendant's negligence.'" *Id.* (*quoting Molzof III,* at 465.) After a bench trial, the *Jeffries* court awarded future medical costs, finding that it would not deny the plaintiff "'the freedom to choose his medical provider and, in effect, to compel him to undergo treatment from his tortfeasor.'" *Id.,* Dkt 64, at 12 (*quoting Molzof III,* at 468).

The Court does not yet need to reach this issue because there are so many issues of fact remaining. The Court is mindful of the parties' positions.

Defendant's motion to summarily dismiss Plaintiffs' damage claim for past medical expenses should be granted and its motion to summarily dismiss Plaintiffs' damage claim for future medical expenses should be denied. The Court notes that parties have not addressed several other issues, like whether Plaintiff could waive his VA benefits regarding this injury or the impact of Medicare on his damages.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion for Partial Summary Judgment to Limit the Award of Damages Based upon Veterans' Benefits (Dkt. 29) **IS:**
    - **GRANTED,** as to past medical costs and
    - **DENIED,** as to future medical costs.

1  The Clerk is directed to send uncertified copies of this Order to all counsel of record and
2  to any party appearing pro se at said party's last known address.
3  Dated this 31st day of July, 2014.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge